**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

WILMA'S FOOD GROUP d/b/a WILMA'S
FAMOUS BBQ, an Illinois corporation,
and WILMA'S JAMAICAN JERK LLC, an
Illinois limited liability company,

        Plaintiffs,

        v.

VILLAGE OF DOLTON, a municipal
corporation, and TIFFANY HENYARD, in
her capacity as Mayor of the Village of
Dolton and Local Liquor Control
Commissioner,

        Defendants.

No. 25 CV 4432

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Wilma's Famous BBQ and Wilma's Jamaican Jerk applied for renewals of business and liquor licenses. They say that defendant Tiffany Henyard, who was the mayor of defendant Village of Dolton, refused to act on their renewal applications for political reasons, costing them business, sales, and profits. They sued the Village and Henyard, alleging violations of due process and equal protection, and seeking a writ of mandamus. To date, neither defendant has been served. Defendants move to dismiss for untimely service and failure to state a claim under Federal Rules of Civil Procedure 12(b)(5) and (b)(6). For the reasons discussed below, the motion to dismiss for untimely service is denied and the motion to dismiss for failure to state a claim is granted in part and denied in part.

## I. Legal Standards

A court may dismiss a case for insufficiency of service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). A plaintiff must serve the defendant with a summons and a copy of the complaint within ninety days of filing the complaint. Fed. R. Civ. P. 4(c), (m). If service is not timely made, it is the plaintiff's burden to demonstrate good cause for the failure. *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 858–59 (7th Cir. 2018); *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). If the plaintiff does not meet its burden, I must either dismiss the suit or grant an extension. *Cardenas*, 646 F.3d at 1005.

A complaint requires only "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.*

At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. *Id.*

## II. Facts

Plaintiffs Wilma's Food Group d/b/a Wilma's Famous BBQ and Wilma's Jamaican Jerk were two restaurants in the Village of Dolton owned by Jason Rogers.

[1] ¶¶ 4–5, 14.[1] Rogers was the son of Riley Rogers, the former mayor of defendant Village of Dolton and longtime political rival of defendant Dolton Mayor Tiffany Henyard. [1] ¶¶ 14–15, 37–39. In 2022, Wilma's Famous BBQ was granted a Class D liquor license, which allowed it to serve to-go cocktails for one year. [1] ¶¶ 35, 56. There were only eleven Class D licenses available in the Village of Dolton. [1] ¶ 34. Wilma's Jamaican Jerk applied for a business license in November 2022, which the Village granted. [1] ¶¶ 117–18.

In April 2023, Wilma's Famous BBQ applied for renewal of its business license and Class D liquor license and Wilma's Jamaican Jerk applied for renewal of its business license. [1] ¶¶ 35, 48, 119. That summer, the Village "began enforcement against allowing authorized businesses to sell to-go cocktails." [1] ¶ 57. Wilma's Famous BBQ lost a "significant" amount of income from the lack of to-go cocktail sales. [1] ¶ 61.

Plaintiffs allege that in October 2023, Wilma's Famous BBQ was served with a "Notice of Hearing on Revocation/Non-Renewal of Business License." [1] ¶ 62; [1-1]. Wilma's Famous BBQ zealously opposed the notice, and the Village ultimately abandoned the notice without proceeding to a hearing. [1] ¶ 70.

Over the course of a year, Rogers repeatedly asked representatives from the Village about the status of both restaurants' license applications and was told each time that the applications remained pending. [1] ¶¶ 50–54. He also sent a letter

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiffs' complaint, [1].

asking the Village to convert Wilma's Famous BBQ's Class D liquor license into a "combo license." [1] ¶¶ 59, 103. In December 2023, Wilma's Famous BBQ filed a Notice of Appeal with the Illinois Liquor Control Commission for the Village's failure to renew the restaurant's Class D liquor license. [1] ¶ 72. Default judgment was entered against the Village for its failure to appear in the matter, and the Commission ordered the Dolton Liquor Control Commissioner—at the time, Henyard—to renew Wilma's Famous BBQ's retail liquor license [1] ¶¶ 74–76. She did not do so. [1] ¶¶ 77, 91.

In April 2025, the Village told Rogers that it had no record of Wilma's Jamaican Jerk's renewal application. [1] ¶ 123.

Plaintiffs say that Henyard targeted them because Rogers is the son of a political rival and because they did not support her political campaign. [1] ¶¶ 100–01, 130–31. They say that they are not the only businesses to suffer retaliation for not supporting Henyard. [1] ¶¶ 44–46. Plaintiffs allege that a Village board meeting "erupt[ed] into chaos amid allegations of misspending and harassment" by Henyard, including that Henyard harassed and revoked the business licenses of businesses that did not support her. [1] ¶ 46 (alteration in original). Plaintiffs allege that Henyard is facing other lawsuits sounding in abuse of power. [1] ¶ 47.

Plaintiffs filed their complaint on April 23, 2025. [1]. According to plaintiffs, they sent waivers of service to counsel for the Village sometime before September 24,

4

2025. [25] at 4–5, 8; [25-1] ¶ 5.[2] Plaintiffs say they followed up on the waivers on September 24, 2025. [25] at 2; [25-1] ¶ 6. Plaintiffs also say that counsel for the Village had actual notice of the lawsuit no later than July 25, 2025. [25-1] ¶ 9. Finally, plaintiffs' counsel says that he had "extraordinary and overlapping litigation obligations" that contributed to the failure to serve defendants. [25] at 4; [25-1] ¶¶ 12–19.

## IV. Analysis

### A. The Village of Dolton's Liability

Section 1983 "provides a civil remedy against any 'person' who violates a plaintiff's federal civil rights while acting under color of state law." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023); 42 U.S.C. § 1983. Local governments are "persons" that can be sued under § 1983 for an "official policy or custom" that violates the Constitution. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 (1978); *Betts v. Boone Cnty.*, 178 F.4th 1051, 1055 (7th Cir. 2026). Plaintiffs may sue a local government "if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Betts*, 178 F.4th at 1055 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (plurality opinion)).

*Monell* liability is not vicarious liability; a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 1056

---

[2] Although plaintiffs' counsel's affidavit says 2026, plaintiffs' motion for extension of time for service was filed before May 2026, and in context, it is clear counsel meant 2025.

(quoting *Monell*, 436 U.S. at 694). The municipality must be the actor, and so must have an "official policy," which "distinguish[es] acts of the *municipality* from acts of *employees* of the municipality." *Id.* (quoting *Praprotnik*, 485 U.S. at 121–22, then *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)) (alterations and emphasis in original).

To survive a motion to dismiss, plaintiffs must plead facts that "plausibly suggest" that: (1) they were deprived of a constitutional right; (2) the deprivation can be traced "to some municipal action (i.e., a 'policy or custom'), such that the challenged conduct is properly attributable to the municipality itself"; (3) "the policy or custom demonstrates municipal fault, i.e., deliberate indifference"; and (4) "the municipal action was the moving force behind the federal-rights violation." *Thomas*, 74 F.4th at 524 (quoting *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir 2021)). For the second element, three types of municipal action can support liability under § 1983: (1) an express policy of the municipality; (2) a widespread practice constituting custom or usage; or (3) an act by a person with final policymaking authority. *Id.*

It appears that plaintiffs proceed on the theory that Henyard, who was the mayor and local liquor control commissioner of the Village, was a final policymaker. [26] at 8. Defendants say that the complaint does not contain sufficient allegations of final policymaking authority and so fails to state a claim against the Village.

A final policymaker is one "whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. To have final policymaking authority is to

6

possess "final authority to establish municipal policy with respect to the action ordered." *Betts*, 178 F.4th at 1056 (quoting *Pembaur*, 475 U.S. at 481 (plurality)).

Whether an official is a final policymaker is determined by state or local law. *Betts*, 178 F.4th at 1056. The question is not whether an official is a policymaker on all municipal matters, but whether she is a policymaker in the "particular area, or on a particular issue." *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 676 (7th Cir. 2009). Officials with final decision-making authority are policymakers under *Monell*. *Id.* The authority to set policy must concern setting policy for liquor license renewals, not merely the act of denying a liquor license renewal itself. *Kristofek v. Village of Orland Hills*, 832 F.3d 785, 799 (7th Cir. 2016). I look to factors like: "(1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Id.* (quoting *Valentino*, 575 F.3d at 676).

Under the Illinois Liquor Control Act, a village has "the power by general ordinance or resolution to determine the number, kind and classification of licenses, for sale at retail of alcoholic liquor not inconsistent with this Act" and to "establish such further regulations and restrictions upon the issuance of an operations under local licenses." 235 ILCS 5/4-1. In exercising that power, the Village may not prohibit a license issuance except for enumerated reasons, including that the applicant is "[a] person who is not of good character and reputation in the community in which he resides," or "[a] person who at the time of application for renewal of any license issued

7

hereunder would not be eligible for such license upon a first application." 235 ILCS 5/4-1; 235 ILCS 5/6-2(a)(2), (8). The mayor of the village "shall be the local liquor control commissioner … and shall be charged with the administration in" the village "of the appropriate provisions of this Act and of such ordinances and resolutions relating to alcoholic liquor as may be enacted." 235 ILCS 5/4-2.

When a liquor license commissioner revokes a liquor license or imposes a fine, a liquor license holder is entitled to procedural protections under the Liquor Control Act, including a public hearing, at least three days' written notice, an opportunity to be heard, an official written record of evidence, and additional hearings and appeals. 235 ILCS 5/7-5, 5/7-9; *Brunson v. Murray*, 843 F.3d 698, 710–11 (7th Cir. 2016). But liquor license renewals do not provide comparable procedural protections. *Brunson*, 843 F.3d at 711. Instead, the Liquor Control Act says that a license holder may renew a license at expiration "provided he is then qualified to receive a license and the premises for which such renewal license is sought are suitable for such purpose." 235 ILCS 5/6-1. The local liquor license commissioner has the right to investigate any applicant for a local license renewal. 235 ILCS 5/4-5. But the Act does not grant a right to notice and a hearing if the commissioner plans or actually decides not to renew, nor does it require the commissioner to state for the record any reasons for denying renewal. *Brunson*, 843 F.3d at 711. The licensee has the right to appeal a denial, at which time the licensee can continue its operations. *Id.*; 235 ILCS 5/7-9. But when a commissioner does *not* act, she makes "it difficult for [the licensee] to

8

appeal, which is a key safeguard against unlawful or unconstitutional acts." *Brunson*, 843 F.3d at 711.

As local liquor license commissioner, Henyard's decision to grant or deny a liquor license renewal was squarely within the realm of her authority. She also had the authority to simply not act, creating a policy of inaction when she wanted to. When she failed to act, there was no meaningful review. *Brunson*, 843 F.3d at 711. And though there are some policies and statutes limiting a local commissioner's decision, *see* 235 ILCS 5/6-2, there is no ordinance or statute that constrained the time in which the Dolton liquor commissioner must act on renewal applications. Henyard was a final policymaker on liquor license renewals for purposes of *Monell* liability.

Henyard was not, however, a final policymaker for business license renewals. Under the Dolton Municipal Code, business licenses shall be granted when a business owner submits a form "prescribed and furnished by the Village Board and submitted to the office of Comptroller and Revenue Administrative Services." Dolton Mun. Code § 110.004. Licenses "shall be granted and signed by the Village President and issued by the office of the Comptroller and Revenue Administration Services. Any application may be ordered by the President *or the Village Board* to be presented to and approved *by such Board* before issuance or approval of the license, and the *Board may overrule the decision of the President* in reference to any application for license." Dolton Mun. Code § 110.009 (emphasis added). Each business license expires on the

9

last day of the fiscal year, and businesses must apply for a renewal each year. Dolton Mun. Code § 110.010.

In the case of business licenses, Henyard was constrained by the municipal code—she was required to grant the license unless certain conditions applied. The Village Board had final approval authority and could overrule any decision Henyard made. Because Henyard was not a final policymaker for granting or renewing business licenses, there is no *Monell* liability and the Village cannot be held liable for any constitutional violations relating to either Wilma's Famous BBQ's or Wilma's Jamaican Jerk's business license renewals.

### B.      Henyard's Liability

Defendants say that plaintiffs only sue Henyard in her official capacity, and so the claims against her are redundant and she should be dismissed as a defendant. [15] at 5–6; *see Malhotra v. Univ. of Ill. at Urbana-Champaign*, 77 F.4th 532, 535 n.2 (7th Cir. 2023).

If a public official violates a person's constitutional rights, the person can sue the public official in their individual capacity or in their official capacity. *Orr v. Shicker*, 147 F.4th 734, 739 (7th Cir. 2025). In an official-capacity suit, "the plaintiff alleges that the defendant was party to the execution or implementation of official policy or conduct by a government because the real party in interest is the entity." *Id.* (quoting *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991)). By contrast "an individual capacity suit focuses on the constitutional torts of an individual officer." *Id.* (quoting *Hill*, 924 F.2d at 1372). "To recover damages under § 1983, a plaintiff

must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Mack v. City of Chicago*, 151 F.4th 887, 898 (7th Cir. 2025) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Plaintiffs need to establish "some causal connection or affirmative link between the action complained about and the official sued." *Id.* (quoting *Gentry*, 65 F.3d at 561)

Plaintiffs sue Henyard "in her capacity as mayor of Dolton and local liquor control commissioner." [1] at 1. The complaint caption does not specify that it is in her official capacity. Nor does the complaint say anywhere it is suing Henyard in her "official" capacity. There is no "'rigid rule' that presumes a § 1983 plaintiff is suing a defendant in her official capacity simply because the complaint is silent." *Orr*, 147 F.4th at 739. I look to the complaint "in its entirety" and to the conduct alleged to determine whether plaintiffs intend to sue Henyard in an official or individual capacity. *Id.* at 740.

Plaintiffs allege that at the direction of Henyard, the Village attempted to not renew or revoke Wilma's Famous BBQ's business license. They allege Henyard did so to issue a liquor license to one of her own associates, in retaliation for Wilma's Famous BBQ's refusal to donate to her mayoral campaign, because its principal was her political rival, and/or so that she could profit off the issuance of one of the finite number of Class D licenses. [1] ¶¶ 79, 81, 100–01. Plaintiffs also allege that Henyard deprived them of due process when she refused to renew their licenses and ignored the Illinois Liquor Control Commission's order to renew Wilma's Famous BBQ's liquor license. [1] ¶¶ 87, 90–91, 126. Plaintiffs say that defendants "singled out"

Wilma's Famous BBQ and Wilma's Jamaican Jerk, treating them differently from similarly situated businesses in the Village. [1] ¶¶ 100–01, 104, 107, 130–32, 135.

Plaintiffs allege that Henyard was personally responsible for the deprivation of their constitutional rights and committed the wrongs or ordered others to commit the wrongs on her behalf. Plaintiffs also allege that Henyard acted for her own personal gain. Based on these allegations, plaintiffs sue Henyard in her individual capacity and Henyard remains as a defendant. She may raise any individual arguments in response to the complaint after she enters an appearance. To the extent that plaintiffs sue her in her official capacity, those claims are redundant and are dismissed. *Malhotra*, 77 F.4th at 535 n.2.

### C.   Due Process

#### 1.   *Property Interest*

To allege a constitutional violation for Henyard's final policymaking acts as liquor commissioner, plaintiffs must also allege a property interest in their sought-after liquor licenses.

The Fourteenth Amendment prevents municipalities from depriving a person of their property without due process of law. U.S. Const. amend. XIV, § 1. A plaintiff must allege that he was deprived of a protected property interest. *See Malhotra*, 77 F.4th at 536. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *FKFJ, Inc. v. Vill. of*

12

*Worth*, 11 F.4th 574, 592 (7th Cir. 2021) (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).

"[A]n Illinois liquor license is a property interest within the meaning of the due process clause." *Brunson*, 843 F.3d at 713; *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 870 (7th Cir. 2009) ("One granted, an Illinois liquor license is a form of property within the meaning of the due process clause. This interest extends to the license's annual renewal." (internal citation omitted)). Wilma's Famous BBQ held a Class D liquor license and was seeking its renewal. It had a property interest in that license and its renewal. The Due Process Clause applies to the deprivation of Wilma's Famous BBQ's liquor license renewal.

On the other hand, there is no property interest in liquor licenses that have *not* been granted. The Dolton Municipal Code lays out sixteen restrictions on the issuance of liquor licenses. *See* Dolton Mun. Code § 111.005. It also has ten different kinds of licenses, each with different requirements, many of which are in direct conflict with others. *Compare* Dolton Mun. Code § 111.006(A)(1) (authorizing the sale at retail and consumption of alcoholic liquor) *with* § 111.006(A)(8) (authorizing the sale at retail and consumption of only beer). Finally, it places a limit on how many licenses can be issued. Dolton Mun. Code § 111.007. Because there are a limited number of licenses for each category, and certain restrictions on who may be granted a license, there is no legitimate claim of entitlement to a liquor license in the first instance. Similarly, there is no entitlement to a change in the category of a license. Just because a business has been approved for a Class A license for alcoholic liquor

13

sales, for example, does not mean that it is entitled to convert its license to a Class G license to sell beer, for which the Village has allotted fewer licenses to be issued. Dolton Mun. Code § 111.007(A)(1). Wilma's Famous BBQ does not have any entitlement to and so has no protected property interest in a "combo" license. Any due process claim based on the refusal to convert Wilma's Famous BBQ's Class D license to a "combo" license is dismissed.

### 2. *Post-Deprivation Remedies*

Defendants say that because plaintiffs fail to allege that post-deprivation remedies are inadequate, they cannot state a due process claim. They argue that "when a [municipal] officer acts in a 'random and unauthorized way … the [municipality] has no opportunity to provide a pre-deprivation hearing and may instead satisfy due process by providing an adequate post-deprivation remedy." *Pro's Sports Bar & Grill*, 589 F.3d at 872. But Wilma's Famous BBQ is seeking more than injunctive relief; it also seeks damages because, it alleges, it lost business, sales, and profits because of the failure to renew its liquor license. [1] ¶¶ 93, 96. It seeks damages "to compensate [it] for the period of time in which" its license was not renewed and it could not sell alcoholic beverages. *Pro's Sports Bar & Grill*, 589 F.3d at 872. "Because no state remedy exists to compensate plaintiffs for these damages, Wilma's Famous BBQ is "not foreclosed from bringing a due process claim" for the failure to renew its Class D liquor license. *Id.*

### D.    Equal Protection

Plaintiffs also bring equal protection claims alleging that they were targeted for retaliation by Henyard for not supporting her and because plaintiffs' principal is the son of Henyard's political rival.

The Equal Protection Clause of the Fourteenth Amendment provides that the government may not "deny to any person … the equal protection of the laws." U.S. Const. Amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1008 (7th Cir. 2019) (internal citation and quotations omitted).

Plaintiffs' equal protection claims rely on the "class-of-one" theory. *Indiana Land Tr. #3082 v. Hammond Redevelopment Comm'n*, 107 F.4th 693, 698 (7th Cir. 2024). "To state a claim under this theory, a plaintiff must allege (1) that [they] ha[ve] been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the difference in treatment." *Id.* (quoting *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 771 (7th Cir. 2021)).

Defendants say that plaintiffs have failed to allege comparators that are "prima facie identical in all relevant respects." They point out that plaintiffs did not allege they were treated any less favorably than similarly situated businesses in the Village of Dolton, and in fact, say that because plaintiffs allege that *other* businesses were similarly targeted by Henyard, that Henyard in fact treated plaintiffs "the very same as the other businesses who did not support her politically." [15] at 10–11.

15

Class-of-one claims are not limited to a single claimant. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 n.* (2000) ("Whether the complaint alleges a class of one or of five is of no consequence because we conclude that the number of individuals in a class is immaterial for equal protection analysis."). That there are other businesses who may have had their business or liquor license renewal ignored for the same reason that the Wilma's' license renewals were ignored shows simply that plaintiffs are part of the "class" being treated less favorably. Plaintiffs allege that they were part of a class treated differently from similarly situated businesses because they were politically opposed to Henyard. [1] ¶¶ 100–104; 129–131, 135. This is sufficient to put defendants on notice of their claims and to state an Equal Protection Clause claim. Plaintiffs may proceed with their equal protection claims.

**E.    Writ of Mandamus and Other Relief**

It appears that the claim for mandamus is moot. Defendants say that Wilma's Famous BBQ has been issued a business and liquor license for the time period at issue. [15] at 4. Plaintiffs do not respond to this assertion. Similarly, injunctive relief may also be moot. It is also likely that damages will be limited to the period of time in which there was no pending appeal before the Illinois Liquor License Commission, at which time the "licensee shall resume the operation of the licensed business pending the decision of the State Commission." 235 ILCS 5/7-9. As this litigation moves forward, plaintiffs must show cause why mandamus and injunctive relief are not moot.

16

### F.    Untimely Service

If a plaintiff fails to serve a defendant "within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "[I]f the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* "Good cause means a valid reason for delay, such as the defendant's evading service," *Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir. 2002), a defendant's "refusal to cooperate," *Lewellen v. Morley*, 909 F.2d 1073, 1075 (7th Cir. 1990), or some other "reasonable basis for noncompliance" with the ninety-day deadline. *Floyd v. United States*, 900 F.2d 1045, 1047 (7th Cir. 1990) (quoting *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985). "[S]imple attorney neglect, without the presence of substantial extenuating factors such as a sudden illness or natural disaster, cannot constitute the sole basis for a 'good cause' determination." *Floyd*, 900 F.2d at 1047.

Even without good cause, I can still grant an extension. *UWM Student Ass'n*, 888 F.3d at 858. Factors to consider in deciding whether to grant an extension include, *Jones v. Ramos*, 12 F.4th 745, 749 (7th Cir. 2021):

> whether the defendant's ability to defend would be harmed by an extension; whether the defendant received actual notice; whether the statute of limitations would prevent refiling of the action; whether the defendant evaded service; whether the defendant admitted liability; whether dismissal will result in a windfall to a defendant; whether the plaintiff eventually effected service; whether the plaintiff ever requested an extension from the court due to

17

> difficulties in perfecting service; and whether the plaintiff diligently pursued service during the allotted period.

When the balance of the factors appears to favor an extension, I still have the "discretion to hold the Plaintiffs accountable for their actions—or, more accurately, inaction—by dismissing the case." *Id.* (quoting *Cardenas*, 646 F.3d at 1007).

Plaintiffs did not have good cause for their noncompliance with Rule 4(m). They had until July 22, 2025, to serve defendants. Plaintiffs' counsel requested a waiver of service sometime between May 2025 and September 2025 and then did not follow up on his request until September 24, 2025, more than two months after the Rule 4(m) service deadline. Plaintiffs say defendants had actual notice of the lawsuit no later than July 25—after the deadline for service. And despite submitting summons in November of 2025, plaintiffs *still* failed to actually serve defendants and have yet to do so.

Plaintiffs' counsel says that counsel was involved in another federal litigation matter during the spring and summer of 2025 and other matters that "constrained available time." [25-1] ¶¶ 12–17. But this is the kind of "simple attorney neglect" that cannot constitute the sole basis for good cause. *Floyd*, 900 F.2d at 1047. And though Henyard may have moved out of Illinois, there is no evidence she attempted to evade service, and neither did the Village. There was no good cause mandating an extension of the service deadline.

I can still grant an extension. The defendants' ability to defend the case would not be harmed by granting an extension. The Village has actual notice, as it filed appearances for the record and a motion to dismiss. [11]–[14]. It does appear that

plaintiffs' counsel made some attempts at seeking waivers, talking with opposing counsel, and tracking down Henyard. And though it took some time, plaintiffs have requested an extension.

Dismissal would be harsh because some claims may be barred from being refiled because the statute of limitations has expired. And many of the facts between Wilma's Famous BBQ's and Wilma's Jamaican Jerk claims are the same, so defendants are only slightly prejudiced by defending against stale claims. *See* [26] at 6 (plaintiffs acknowledging that Wilma's Famous BBQ claims "arguably" ran in December 2025, though stating there may be tolling or relation-back issues). In dismissing the case, plaintiffs would be harshly penalized for their counsel's failures.

On balance, the factors favor an extension.

## IV. Conclusion

Defendants' motion to dismiss, [14], is granted in part and denied in part. Plaintiffs' claims for due process violations for the non-renewal of their business licenses are dismissed with prejudice.[3] Wilma's Famous BBQ's claims for due process violations for its liquor license renewal may proceed, but any due process claims based on the conversion of its Class D license to a "combo" license are dismissed with prejudice. Plaintiffs' equal protection arguments may also proceed. Plaintiffs' motion for an extension of time to serve defendants, [25], is granted. Plaintiffs must serve

---

[3] While plaintiffs are "generally entitled to at least one chance to amend their complaint to cure an error in response to a district court's dismissal order," *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 671–72 (7th Cir. 2023) (internal quotation marks and citation omitted), because any amendment would be futile, I dismiss with prejudice.

19

both defendants by August 17, 2026. The Village shall answer the surviving claims

by August 27, 2026 and the parties shall file a joint status report proposing a case

schedule by September 3, 2026.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: July 16, 2026